CHANCE *v.* TEMPLE, School Fund Com.

'The writ of mandamus is a prerogative writ, and not one of right. The mandate contained in it, is the expression of sovereign authority, which is not had simply by asking, but only on good cause shown.

The word *information* in section 2183 of the Code, which provides that the writ is issued "on the information, under oath, of the party beneficially interested," does not mean a pleading *distinct from* the affidavit mentioned in section 1968, but is used in its ordinary signification, and means simply the knowledge communicated to the court *by* the affidavit.

The practice in procuring the writ, and the writ itself, remain as at common law; and it is to the matter of inducement stated in the writ, to which the defendant must answer, as heretofore, if he does not choose to obey its mandate.

The information or affidavit should not be entitled of any cause, for the application is as yet *ex parte*; but this is merely formal, and to be availing, the objection must be taken *in limine*, as on the reading. The information should be addressed to the court before which it is laid.

A proper style of commencement would be, "A. B. of full age, being duly sworn, now here causes the court to be informed, that," &c., but no particular set of words is required to constitute an information, if sufficient in substance.

The legal principles which govern the dispensation of the writ of mandamus, have not been materially affected by the provisions of the Code. The latter are but declaratory of the former.

The affidavit or information on which the motion for the writ is based, should be such, that from the facts therein stated, the court is informed that the inferior tribunal, corporation, board or person sought to be made defendant to the writ, has, after being distinctly requested, refused to perform, an act which the law specially enjoined upon such defendant, as a duty resulting from the office, trust or station of such defendant; and all other facts, necessary to give jurisdiction to the writ in the particular case, as to show an absence of other legal remedy—that the person who seeks the aid of the writ, is beneficially interested in having the act performed, and the like—should

Chance v. Temple.

be fully stated. In other words, the relator must show his title to the writ in his affidavit, or the court will refuse the writ.

The affidavit should contain the precise substance of facts, and it will be insufficient, if the allegations be not so positive, that an indictment for perjury could be maintained upon them, if false.

Although the affidavit should be such, that from it, it may be judicially ascertained that there is no specific legal remedy, yet it is not necessary that this should be averred in it.

The affidavit must be accompanied by a motion for the writ, for it is never granted, except on motion, which must be presented in open court.

The court may require a notice of the application to be given to the adverse party, or may grant an order to show cause, or may, in its discretion, grant the writ without notice.

The peremptory writ will not be granted in the first instance, except in cases of extreme urgency, or in cases that, from their nature, admit of no excuse, or where the defendant is party to the proceeding then pending before the court.

In granting the peremptory writ, the alternative writ, or in ordering the rule to show cause why an alternative writ should not issue, the court will regulate its discretion by the well established usages of the common law.

Care should be taken that the writ be properly directed; and if the writ is to be executed in an official capacity, it is preferable to direct it to the defendant by his official appellation, without designating his name.

The body of the rule to show cause why an alternative writ should not issue, or the rule awarding the writ, should be expressed in definite terms, or the mandamus which may follow the rule or order, may be void for generality.

The court, although doubtful of the prosecutor's right to the writ, on an *ex parte* showing, may, in its discretion, award the alternative writ, that it may be better informed on the argument, or showing on the return; and unless the case is plainly not within the jurisdiction of the writ, on the professional statement of the attorney for the applicant, that his object is to take the opinion of the Supreme Court on the question, will generally do so. And will also grant an alternative writ under circumstances of doubt, where a peremptory writ is asked for in the first instance, on a like statement by counsel for defendant, that, in either case, proper issues may appear, and be determined for review in the superior court.

A proceeding by mandamus is a prosecution within the meaning of the constitution, and should be prosecuted in the name of the state.

Where the object of the proceeding is to enforce a duty for mere private ends, it should be in the name of the state, on the relation of the informant.

Although the writ should run in the name of the state of Iowa, it is not essential that it should be expressed on its face, to be by the *authority* of the state; but it should not appear on its face to be by any other authority.

There is not inherent in the District Court, as such, any authority to command by this writ. It is the sovereignty of the state, in contemplation of law sitting in that court, from whence the mandate comes, upon the condition

Chance v. Temple.

precedent, that the court shall have determined that the act to be done, is one proper to be enforced by its mandate.

Sections 2184 and 2185 of the Code, simply declare the distinction between the alternative and peremptory writ of mandamus, as it existed at common law; and the matter of inducement, required at common law, to be stated in the writ, is not dispensed with by those sections.

The prosecutor will be bound by the mandatory clause of the writ; for it is a rule, that the writ must be enforced in the terms in which it is issued.   The mandatory clause must be supported by, and not exceed in legal value, the averments of title forming the inducement of the writ, and be in conformity with the legal obligation of the defendant.

Where the mandate of the writ required the defendant to convey to the informant certain school lands described in the information, or show cause why a peremptory writ should not issue, and the law conferred upon the defendant, as school fund commissioner, no authority to *convey* such lands, it was *held*, that the mandate of the writ exceeded the legal obligation or duty of the defendant, and was, therefore, void.

In answering to a writ of mandamus, as well as in showing cause as to the sufficiency of the writ, in law as in fact, and to all subsequent proceedings, the ordinary rules of pleading in civil actions are applicable, except that a return as to fact, should always be on oath.

The court has no power to award a peremptory mandamus in a more limited, or other form, than the alternative.   It must go in the terms of the original, with the exception that it omits the words which require the defendant to show cause, or not at all.

The proper order on the hearing of the application for a peremptory writ, after an alternative, is, "Let the writ be made peremptory," or "peremptory writ refused."

Although a proceeding under the writ of mandamus, is a prosecution within the meaning of the constitution, yet it is not a criminal action within the meaning of section 3088 of the Code, but a proceeding of a special or independent character within the definition of section 1555 of the Code, and is properly brought to this court by appeal.

The writ of mandamus cannot be used to *perfect* an inchoate contract, or to *make* a contract that will bind the state.

Where the writ of mandamus is sought to enforce a contract for the sale of school land, and the relator, from his own showing, discloses that other persons have become purchasers of the same land, whom he does not charge with notice, this proceeding is not the proper one to discover the rights of the several persons in the land.

In such a case, a resort to equity, in the first instance, to settle the right of the informant to the land, would be proper, even if that right had to be enforced by mandamus, when settled.

*Appeal from the Lucas District Court.*

THIS was a proceeding by mandamus.   An alternative

writ had been granted on an *ex parte* showing, on which, after a hearing on the alternative writ, a rule had been entered for a peremptory writ. The application for the alternative writ was made by William Chance, and is substantially as follows: That some time during the year 1853, to wit, on the 24th day of December, the relator made application to Samuel D. Houston, then school fund commissioner of Lucas county, to purchase certain lands described in the application, which were subject to sale at his office; that the said commissioner informed the relator, that the said lands were pre-empted by one Root; that the pre-emption would hold until the 1st of January, 1854, but that the relator would be permitted to "enter" said lands, subject to said pre-emption; that thereupon the relator "entered" said lands, by paying one-fourth of the price for which said lands were offered for sale, in cash, and took the receipt of said commissioner therefor, which receipt specified that the money so paid, was the one-fourth payment on said land, subject to said Root's pre-emption; that Root failed to make good his pre-emption, and on the 2d day of January, 1854, the relator "applied" to said commissioner, at his office, for a contract showing his interest in, and title to, said lands, and declared his willingness to subscribe the note, contract, and all other obligations or forms required by the law in such cases made and provided; and that said commissioner refused to make or issue said contract or certificate of title to said lands. The relator further states, that he did, at the time and place aforesaid, offer to pay the balance due on said lands, to secure a patent for the same immediately; that said commissioner refused all of said proposals, and declared his determination to offer said lands for sale at public auction; that relator has refused to take back the one-fourth purchase money so paid by him, and still holds the receipt for the same; and that Edward A. Temple is the present school fund commissioner of Lucas county.

This information, which is in the usual form of an affidavit before a notary, also, unnecessarily discloses, among other things not material to be here named, that after the

money was left by the relator with the commissioner, another person also made application to purchase a part, or all, of the said lands; that the commissioner permitted him so to do, subject to Root's pre-emption; that the commissioner informed the relator that he should offer the lands for sale at public auction, to the highest bidder, and offered to pay back the one-fourth of the purchase money paid by the relator; and that said lands were offered for sale at public auction, and who became the purchaser of the several tracts respectively. The information also sets forth what the records of the office of the commissioner show, as to who has become the purchaser of the several tracts.

To the alternative writ, which will be described sufficiently in the opinion of the court, Edward A. Temple, school fund commissioner, makes return, in substance, as follows: That he came into office on the 10th day of April, 1854; that he knows only from the records that appear in his office, as kept by his predecessor, what transactions were had before that time; and that he is, therefore, unable to respond to the various charges in said affidavit and motion of Chance, and calls upon him to prove the same to the court, denying them for that purpose only, that facts may appear by proof as they exist. The return, also, sets forth what the records of his office show as to others having become purchasers of said lands, and states that he knows of no objection, on the score of legality, to said entries by others; submits the whole matter to the judgment of the court, with an assurance of willingness to discharge any duty the court may direct, and prays that no costs may be charged to the school fund or himself, as he has refused no application made by the relator in regard to any of said lands. The return states further, as a reason why he cannot obey the writ, that no money has been paid or tendered him by said Chance; that there is a balance due on said lands from other purchasers, which, when paid, will entitle them to a title to said lands; and that the facts alleged being unknown to him, he cannot assume them to exist, and act upon them.

A replication was filed to this return, which admits that

the records of the office of the commissioner show only what is stated by the defendant, and that no payment or tender had been made to Temple, the then commissioner, but avers that the tender was made to Houston, his predecessor. The replication then goes on to re-assert the claim of the relator, and concludes as follows: "Your petitioner therefore prays a decree against said Temple, ordering him to execute a title to your petitioner, and for such further relief as the court may deem proper." With the replication, is filed the receipt of Houston, the former school fund commissioner, for the one-fourth of the purchase money of the land.

Upon the issues thus presented, a trial was had, and there-upon an order for a peremptory writ, was made, as follows: "The court being advised of and concerning the premises, it is considered, that a peremptory mandamus issue herein, directed according to law, requiring the school fund commissioner of Lucas county, Iowa, to forthwith make, execute, and enter into, the writings required by law to evidence the contract made by him on the 23d day of December, 1853, for the following lands (describing the lands), and to do all things else which he is in duty bound to do as such officer in the premises." From this order, Temple appeals, and in this court alleges that the court below erred:

1. In sustaining the motion for the writ;
2. In ordering the writ to issue upon said motion;
3. In directing the issue for a peremptory writ;
4. In not dismissing the cause on final hearing.

*Knapp & Baker*, for the appellant, made the following points:

A party applying for the writ of mandamus, must have a subsisting, not an inchoate, interest. Mandamus will not issue, to compel an officer to make a contract to bind the state, it being in effect a suit against the state. 2 Texas, 497; *The People* v. *Canal Board*, 13 Barb. 432. Nor will it issue to an officer, after his term has expired. 20 Vermont, 487. Nor unless it appears that the officer has omitted a manifest duty.

Chance v. Temple.

2. Mandamus does not lie to an inferior court or officer, to compel any particular decision, but only to compel it to act in the premises. *Commonwealth* v. *Judges, &c.*, 3 Binn. 273; 3 U. S. Dig. 6; *Jamison* v. *Reed*, 2 G. Greene, 394. It will only direct the court or officer to proceed according to law, but will not direct it or him how to proceed. *Roberts* v. *Halsworth*, 6 Peters, 661; 5 Halst. 57; 3 U. S. Dig. 6.

3. Mandamus is a criminal process, relating to civil rights. *State* v. *Bruce*, Const. 165. Being a criminal process, it must be prosecuted in the name, and by the authority of the state of Iowa. *Alexander* v. *Rogers*, 2 G. Greene, 443. And should be conducted strictly in accordance with the law directing it, and the occasion for action, and the proof should be certain and unequivocal. *Commonwealth* v. *Bank Com.*, 10 Wend. 25. And the writ will not issue where the party has any other legal remedy. Code, 301; *Jamison* v. *Reed*, 2 G. Greene, 394. In this case, the relator has a remedy in equity, if he had a valid contract.

*W. Penn. Clarke*, for the appellee.

Isbell, J.—The order awarding a peremptory writ, must be reversed, and the alternative writ quashed. We might point to one or two radical defects in these proceedings, or examine only as to the relator's right to the aid of this remedy, under the title he has set up, and there stop. But the unsettled state of the practice with regard to this writ, as evidenced by the entire proceedings in this case—that a case so defective in all points of practice, should have reached this court—seem to require from the bench, more than a passing remark, sufficient to decide it. We shall, therefore, endeavor to give construction to our statutes touching this writ, and sketch the general outline of the practice; and in doing so, shall not confine ourselves so closely to the questions raised, as we would regard it our duty to do, were this a case of a different character, where the pronouncing generally upon it, might have a greater

tendency to interfere with vested rights, or were it not a proceeding peculiarly under the supervision of this court.

The first step to be taken in order to obtain the benefit of this writ, is to inform the court of the ground upon which it is invoked; for this is a prerogative writ, and not one of right. By this, we mean, the mandate contained in it, is the expression of sovereign authority, which is not had simply by asking, but only on good cause shown.

It is issued on the information, under oath, of the party beneficially interested (Code, § 2183), and is obtained in the same manner as a writ of *certiorari* (§ 2186), by motion, made on affidavit (§ 1968).

A question vital to the practice, growing out of the manner in which the word *information* is used in various parts of the Code, here arises: What is meant by the word *information*, in the section above first quoted? Does it mean a pleading *distinct from* the affidavit mentioned in the section last quoted, or is the information spoken of in that section, simply the knowledge communicated to the court by the affidavit? If the latter, the practice in procuring the writ, and the writ itself, remain as at common law; and it is to the matter of inducement in the writ, to which defendant must answer, as heretofore, if he does not choose to obey its mandate. If the former, the only office that we can conjecture which it can perform, is to stand in place of the matter of inducement required, at common law, in the writ, so far as to be answered to; and how far this matter in the writ might be dispensed with, would remain a question. We conclude that this word is used in its ordinary signification, and not as a pleading distinct from the affidavit. This conclusion preserves the harmony of the statute under the provisions of the common law, of which its general tenor appears declaratory; and we cannot believe that so important a change in the practice, as that to which the other conclusion would lead, was intended to be wrought, and not by any provision defined, either as to what that information should contain, or otherwise. Again: we cannot conjecture why this information, if one distinct from the affidavit is

required, need be on *oath*, more than the writ at common law. We think, too, that the phrase would have been *an* information, and that the provision for answering, in section 2187, would have provided that the answer should be to the information, as that was in that connection the remote, and the writ the proximate, antecedent, if an answer to the information, instead of the writ, was intended, especially as the answer always had been to the writ. We should not have made so serious a question of this, had we not been aware that the manner in which the word information is used in various parts of the Code, has made its use here, occasion an ambiguity which has served to perplex men of fair professional minds.

The information or affidavit should not be entitled in any cause, for the application is as yet *ex parte* (2 Johns. 371; 1 Wend. 291; 7 Howard Prac. 127; and 5 D. & East, 466); but this, we apprehend, is merely formal, and to be availing, the objection must be taken *in limine*, as on the reading. In this, these proceedings are not objectionable. It should be addressed to the court before which it is laid. In this case, it is not addressed to any court, and the only mark by which it appears that it has been before any, is the indorsement of filing by the clerk. We do not mean to be understood that this is ground of error, after awarding the writ, but only notice it, to point to a more correct practice.

A more proper style of commencement, than that adopted in this case, would, perhaps, be: " A. B., of full age, being duly sworn, now here causes the court to be informed, that," &c., but this is merely formal, no set of words being necessary to constitute an information, if sufficient in substance. And here we may remark, that the legal principles that govern the dispensation of this writ, have not been materially affected by the provisions of the Code, but that so far as the statute relates thereto, it is but declaratory of those principles. In substance, the information should be such, that from the facts therein stated, the court is thereby informed, that the inferior tribunal, corporation, board, or

person, sought to be made defendant to the writ, has, being distinctly requested, refused to perform an act which the law has specially enjoined upon such defendant, as a duty resulting from the office, trust, or station of such defendant; and all other facts necessary to give jurisdiction to the writ in the particular case, as to show an absence of other legal remedy—that the person who seeks the aid of the writ is beneficially interested in having the act performed, and the like—should be fully stated. In other words, the relator must show his title to the writ, or the court will refuse the rule. Code, §§ 2179, 2180, 2182, and 2183; Tap. on Mand. 293, and authorities there cited.

We do not purpose entering into a minute analysis of the substance of the title to the aid of this writ; but it may not be without its use, that we call attention to some of the general, well established doctrines of the law in relation thereto, which we may do without going far out of the case.

*First*—The information should state facts. Mere evidence, or legal conclusions, or that of which the court may take judicial notice, or that which should properly appear by way of defence, need not be stated. It would occupy too much space to review the information in this case, and point out its redundancies. As to the manner of stating the facts, it is laid down by Stephens, in his Nisi Prius (2318), quoting *Rex* v. *Sargent*, 5 T. R. 466, that the affidavit should contain the precise substance of facts; and it will be insufficient, if the allegations be not so positive, that an indictment for perjury could be maintained upon them, if false.

*Second*—That the inferior *tribunal, corporation, board,* or *person,* sought to be made defendant to the writ, is legally required to perform the act sought to be enforced. This proceeding is not in its nature personal, until an attachment is asked to enforce obedience. *People* v. *Champion,* 16 Johns. 64. The information furnishes the basis for the writ. The *direction* of the writ is a very material part of it. Tap. on Mand. 310. The court, when it grants the rule, will not in general give *direction* to it, for this might be prejudging the right, upon which may depend the very ques-

tion to be tried (*King* v. *Mayor of Ripon*, 2 Salk. 433 ; Steph. N. P. 2322); but will, in general, simply order, in short, "rule granted," in which case the rule, as well as the writ, should follow the information ; though in doubtful cases the court may, in its discretion, and sometimes does, suggest the form of the rule. The writ should correspond with the rule. Tap. on Mand. 299, and authorities cited in note X.

*Third*—Has, being distinctly requested, refused. This demand must be express and distinct, and not couched in general terms, but should accurately demand the performance of that which the defendant can, or should do, and which the court is asked to compel. Both the demand and refusal should appear in the information ; and if the demand does not clearly appear to have been properly made, the court will refuse the rule. As to the demand—by whom made—when to be made—and to whom—form of—and how it should appear in the information—see Tap. on Mand. 282 and 287, and authorities there cited.

*Fourth*—Which the law, &c.—this comprehends the common, as well as the statute, law. Tapp. on Mand. 11.

*Fifth*—As a duty resulting from the *office, trust*, or station, &c. This writ is not applicable as a redress of mere private wrong. Tapp. on Mand. 5, and authorities cited in note *i*; also 11, note *n* and *o*. During the time that Lord Mansfield presided in the Court of King's Bench, he took great pains to define the nature and character of this writ. In the case of *King* v. *Barker*, 1 W. Blac. 352, he says : " A mandamus is certainly a prerogative writ, flowing from the king himself, sitting in this court, superintending the police, and preserving the peace of the country." It is laid down by Tapping, in summing up the effect of the various decisions of Lord Mansfield, as to when the writ will be granted, and when refused, that the Court of B. R. as the general guardian of *public rights*, and in the exercise of its authority to grant the writ, will render it, as far as it can, the suppletory means of substantial justice in every case where there is no other specific, legal remedy, for a legal right ; and will pro-

vide as effectually as it can, that official duties are fulfilled, wherever the subject matter is properly within its control. It is only granted to compel the performance of public duties. Steph. Nisi Prius, 2291; Tapp. on Mand. 9.

*Sixth.*—Absence of legal remedy. It ought not to be issued in any case where there is a plain, speedy and adequate remedy, in the ordinary course of law. Code, § 2182. The language of this provision is restraining. We regard it as intended to prevent abuse of this writ, and not that it constructively enlarges its jurisdiction; the language of the common law in this connection, being that (among other things), the absence or want of a specific legal remedy, is necessary to give the court jurisdiction to dispense the writ. What is a specific legal remedy, we do not purpose to inquire, but only say, that it has been repeatedly decided by the courts of other states, and of England, that where any of the ordinary civil actions, as a special action on the case, debt, covenant or assumpsit, will lie, they are such remedies. Or where a party has a remedy by appeal, writ of error, or *certiorari*, they are such remedies. But that an indictment will lie, or that a party may obtain relief in equity, is not necessarily such remedy. How far the courts of this state may go on this subject, remains to be determined. We might add, that although the information should be such that from it, it may be judicially ascertained that there is no specific legal remedy, yet it is not necessary that this should be averred in it. 1 Iredell, 129.

This information must be accompanied by a motion for the writ, for it is never granted except on motion, and must be presented in open court. The court may require a notice of the application to be given to the adverse party, or may grant an order to show cause, or may, in its discretion, grant the writ without notice. Code, § 1968. We apprehend that this is, also, declaratory of the common law. The peremptory writ will not be granted in the first instance, except in cases of extreme urgency, as to compel a jailer to deliver up the body of a prisoner that died in his custody, for burial (Tapp. on Mand. 407), or in cases that from their nature

admit of no excuse, and where danger of prejudice to the rights of the party, might result from delay, as where a clerk refused to record a deed, for the reason that the acknowl-edgement was not such as to justify its being recorded, the court being satisfied as to the validity of the acknowledg-ment by inspection, and it being urged that another deed might be recorded, if delay was had, by first awarding an alternative (*Ex parte Goodell,* 14 Johnson, 325), and the like (*Board of Police* v. *Grant,* 9 S. & M. 77 ; Tapp. on Mand. 406, 407) ; or where the defendant is party to the proceed-ing then pending before the court. In short, in granting the peremptory writ, the alternative writ, or in ordering the rule to show cause why an alternative writ should not issue, the court will regulate its discretion by the well established usages of the common law.

With regard to the form of the rule or order awarding the writ, we have anticipated most that need be here said. If the court takes upon itself the responsibility of moulding the rule, which, in its discretion, it may do, care should be taken that the writ be properly directed ; and if the writ is to be executed in an official capacity, it is preferable to direct it to the defendant by his official appellation, without designating his name, as this avoids any inconvenience aris-ing from a change of the person in the office. The body of the rule should be expressed in definite terms, or the man-damus, which must follow the rule, may be void for gen-erality. Tapp. on Mand. tit. Form of Rule, 299. The court will suggest the time of return. Code, § 2184. We might add, that the court, although doubtful of the prosecutor's right to the writ on an *ex parte* showing, may, in its discre-tion, award the alternative writ, that it may be better in-formed on the argument, or showing on the return ; and unless the case is plainly not within the jurisdiction of the writ, on the professional statement of the attorney for the applicant, that his object is to take the opinion of the Su-preme Court on the question, will generally do so. And will, also, grant an alternative writ, under circumstances of doubt, where a peremptory writ is asked for in the first in-

stance, on a like statement by counsel for defendant, that, in either case, proper issues may appear and be determined, for review in the superior court.

We shall, hereafter, speak of the case at bar as we go along. The question here made, is, in what name shall the writ be prosecuted? The language of our constitution (Art. 5, § 6), is, the style of all process shall be "The state of Iowa," and all prosecutions shall be conducted in the name and by the authority of the same. Is the proceeding by mandamus a prosecution within the meaning of the constitution, so as to require it to be conducted in the name of the state? The high prerogative nature of this remedy— the impropriety of coercing high official duties in any name less potent than the highest civil authority—the universal practice everywhere in cases where the public is primarily interested—the fact that proceedings under this writ, are so universally denominated in the books a prosecution (although we are not prepared to determine that it is a *criminal* prosecution, as contended for by the defendant here)—with other reasons that might be named—leave little doubt in our minds, that it is a prosecution within the meaning of the constitution, and hence should be prosecuted in the name of the state. And as this case is conducted in the name of an individual, it is therefore erroneous. Where the object is to enforce a duty, for mere private ends, it should be in the name of the state, on the relation of the informant. Although the writ should run in the name of the state of Iowa, yet it is not essential that it should be expressed on its face, to be by the authority of the state ( *Wrocklege* v. *State, Ante*, 167) ; but it should not appear on its face, to be by any other authority, as it does in this case, to wit: "In the name of the state of Iowa, and by the authority of the District Court in the county of Lucas." There is not inherent in the District Court, as such, any authority to command by this writ. It is the sovereign authority, in contemplation of law (ever willing that right should be done), sitting in that court, superintending the police of the country, from whence the mandate comes, upon the condition precedent, that the

court (being vested with authority under the constitution and laws) shall have determined that the act to be done, is one proper to be enforced by its mandate.

We come now to speak of the *direction* of the writ, which we have, also, in a measure anticipated. We would only say, further, that this is so material a part of the writ, and if defective, gives to the defendant a defence so clear and simple, that too much pains cannot be taken to insure its accuracy. Tapp. on Mand. 310 to 320, and alphabetical series of directions, note *q*, 310 to 313. It must be remembered, that the writ must be executed in terms, or not at all. Tapp. on Mand. 409, and authorities in note *j*. In the case before us, the information shows that "Samuel D. Houston, school fund commissioner (not *as* school, &c.), did, and refused to do, certain acts," and finally concludes by saying, that "Edward A. Temple is the present school fund commissioner." The motion is for the writ to issue to "Edward A. Temple, school fund commissioner." The court, in this case, saw proper to make the rule in effect "to the school fund commissioner of Lucas county," which, if the writ should have issued at all, was the proper direction. But the writ, when it is issued, is issued, "to Edward A. Temple, greeting." Now, that such a writ was not authorized by the rule; or that Edward A. Temple, as Edward A. Temple, cannot make a contract evidencing title to the school lands of the state; or if he should conclude to obey the command, and do so, that such contract would be abortive, is so plain that the case has only to be stated, to show its glaring absurdity. The writ should have been quashed at sight, for these, if for no other reasons. Tapp. on Mand. 336, and note *o*.

The writ is fatally defective in another particular; that is, in the matter of inducement, to which the defendant may answer. We can only account for this, on the ground that there has been a misconstruction of the Code in relation to this writ. The following clauses, as we think, have been entirely misapprehended: "It is either alternative or peremptory," section 2183. "The alternative writ commands

the defendant to do the act required to be performed, or show cause before the court forthwith, or at a specific time and place, why he has not done so, and that he then and there return the writ," section 2184. The peremptory writ omits the words which require the defendant to show cause why he has not done as commanded," section 2185. It seems to be the impression, that these provisions of the Code, describe the whole writ, and that the matter of inducement required at common law in it, is dispensed with. We do not so understand the statute. These sections simply declare the distinction between the alternative and peremptory writ, as it existed at common law, and no more. The only ground on which it could, for a moment be supposed, that this matter in the writ could be dispensed with, must be that a distinct information from that on which the court is moved to issue the writ, to which the defendant may answer, is required, which question we have disposed of in setting out. But here, there is neither an *information* distinct from the affidavit, *or* matter of inducement in the writ. We do not purpose going into a minute inquiry of what facts should appear in the writ, or how they should be stated. Very much of what we have said in relation to the substance of the information, is here applicable. We need only add, that this matter of inducement is, in short, everything necessary to show jurisdiction over the subject of the writ, and to warrant its mandate, stated with precision and issuably. See form in *People* v. *Commissioners of Saline*, 1 Cow. 29 ; also form that has been questioned, in *Blunt* v. *Greenwood*, 1 Cow. 22, note *e*; 4 Cow. 75; *People* v. *Supervisor of Fulton*, 14 Barbour, 54; *Canal Trustees* v. *People of Illinois*, 12 Ill. 248 ; *People* v. *Ranson*, 2 Const. 490; *Hoxie* v. *County Com. of Somerset*, 25 Maine (12 Shep.), 333; *Commercial Bank* v. *The Canal Commissioners*, 10 Wend. 25. And see the subject treated of, and full authorities cited, in Tapp. on Mand. chap. 5.

We pass on to the mandatory clause of the writ. And here, too much care cannot be bestowed. The prosecutor will be bound by it, for it is a rule, that the writ must be en-

forced in the terms in which it is issued, or not at all. Tapp. tit. Mandatory Clause, 323. It must be supported by, and not exceed in legal value, the averments of title forming the inducement of the writ, and be in conformity with the legal obligation of the defendant. Ib. 323 and 326. Let us look at the mandate of the writ in this case, which is as follows: "You are hereby commanded to convey to William Chance, according to the law in such case made and provided, and in accordance with the rules, regulations, and customs governing the sale of state lands at your office, the following described saline lands," &c., or "show cause," &c., "To convey." We have to learn any authority that any school fund commissioner has, to *convey any of the lands* of the state, saline or school. He may, as such commissioner, contract for the sale, or bargain them away, and receive the price, and certify to the purchaser. This is the extent of his agency in this particular. The *conveyance* comes from another source, from the governor, by patent. Here, then, the mandate exceeds the legal obligation or duty of the defendant, and it is, therefore, void. Again; were we permitted to go back to the affidavit, it would appear, that although the unpaid three-fourths of the purchase money was offered to the defendant, yet it was not received by him, and is still in the hands of the relator. Now, it strikes us, that if everything beside would warrant the mandate, the relator could only properly ask, that a command be allowed to go forth to the defendant, to certify, on *being tendered the residue of the purchase money*.

We pass on to the answer. If a defendant does not choose to obey the mandate, and make return accordingly, how may a writ of mandamus be answered? Section 2187 of the Code provides, that, "on the return day of the alternative writ, or on such farther day as the court may allow, the party on whom the writ has been served, may show cause, by a sworn answer, made in the same manner, as an answer to a petition in a civil action, and issue may be made thereon, and tried accordingly." It will be observed, that the word answer, alone, is used in the statute; and while we have no doubt

that the answer may be, by way of traverse, or confession and avoidance, yet may the defendant demur to the sufficiency of the writ? In England, a distinction is taken between a demurrer (which is not allowed), and a submission in the return, that the defendant is not bound in law to execute the writ (Tapp. on Mand. 362): which is considered an answer in the nature of a demurrer, and treated accordingly. In the case of *Hillis, school fund commissioner of Jones county* v. *Ryan*, December term, 1853, which was reversed, because the court below refused to allow the defendant to answer over after demurrer, GREENE, J., bases the opinion of the court on section 1755, of the Code, regulating civil proceedings; and nowhere intimates that a demurrer was not a proper answer. It will be observed, too, that the language of the statute is, that "*issue may be made thereon.*" The question then arises, may the *relator* demur to the answer? The language of 9th Ann, chap. 20, is, "it shall and may be lawful to, and for the person or persons suing or prosecuting such writ of mandamus, to plead to or traverse all, or any, of the material facts contained within the said return; to which the person or persons making such return, shall reply, take issue, or demur." Under this statute, the courts constantly refused the relator the right to demur, until 6 and 7 Vic. chap. 67, § 1, expressly gave that right. And in New York, the practice of demurring to the answer, has been frequently discountenanced. 9 Wend. 429; 1 Wend. 38; 16 Johns. 61.

At common law, the return was taken as true; and if on its face a sufficient defence, the court would refuse to proceed, but leave the relator to his action, or to a criminal information for a false return. Our statute on this subject is far from being explicit. The indirect sanction already given to demurring to the writ, by the case above cited—the general phrase of the statute—the general tenor of our laws, that a party shall not be concluded in his rights until fully heard, both as to law and fact—the ordinary mode provided for taking advantage of substantial defects in proceedings, being by demurrer—together with the apparent

Chance v. Temple.

effort on the part of the legislature, to reduce pleadings to one common system—seem to combine in justifying us in saying that, in answering to a writ of mandamus, as well as in showing cause as to the sufficiency of the writ, in law, as in fact, and to all subsequent proceedings, the ordinary rules of pleading in civil actions are applicable, except that a return as to fact, should always be on oath.  But, as this is not a question made in this case, and we have not had the benefit of argument, we would not pronounce upon it too decidedly. The answer in this case was not good, not being on oath, and was to the affidavit, and not to the writ; but it was undoubtedly sufficient, as there were no facts stated in the writ that could legitimately be answered, and a defendant can only traverse what is stated in the writ.  *Com. Bank* v. *Canal Com.*, 10 Wend. 25; *The People* v. *Ransom*, 2 Comst. 492 ; 3 Barn. & Ald. 221; *The People* v. *The Supervisors of Fulton*, 14 Barbour, 54; Tapp. on Mand. 337, and note *q.* The proper practice in this case, would have been to move to quash, or to demur.  Or rather, the court should have quashed the writ at once, without motion, simply on the suggestion of the entire want of inducement.

And next, as to the rule for the peremptory writ.  The court has no *power* to award a peremptory mandamus in a more limited or other form than the alternative.  It must go in the terms of the original, with the exception that it omits the words which require the defendant to show cause why he has not done as commanded (Code, 2184, 2185 ; Tapp. on Mand. 305, and authorities in note *q ;* Ib. 402, and note *m*), or not at all.  Ib. 409, and note *j.*  The proper order, on the hearing of the application for a peremptory writ, after an alternative, is, " let the writ be peremptory," or " peremptory writ refused."  The final order in this case, awarding a peremptory writ, is as follows :  " It is considered, that a peremptory mandamus issue herein, directed according to law, requiring the school fund commissioner of Lucas county, Iowa, to forthwith make, execute, and enter into, the writings as required by law, to evidence the contract made by him on the 23d day of December, A. D. 1853,

for the following lands (describing the lands), and to do all things else, which he is in duty bound to do as such officer in the premises." We have seen that the original was directed "to Edward A. Temple." The peremptory writ is to be directed according to law, requiring the school fund commissioner, etc. The command of the original, is to convey according, etc. Here, it is to make, execute, and enter into, the writing required by law to evidence the contract. The contract here named is one made on the 23d of December. Wherever the contract is spoken of in the papers, it is described as having been made on the 24th of December; but it is not named in the original writ in any way. Here, there is no person named with whom the contract is to be made, nor was there in the original writ (though the original required the conveyance to be to William Chance), and this clause of other duties, although prayed for in the replication, is, we apprehend, without precedent. The irregularity of this proceeding has but to be stated, to be apparent. It is not meet, because you have been permitted to call upon one person to show cause, why he should not be compelled to do a certain act, in a certain manner, that a sovereign mandate should go forth to another person to do a different act; nor yet to the same person to do a different act; nor yet to the same person to do the same act in a different manner. As well might a peremptory writ issue in the first instance, without a showing. It must be remembered, that this is a high prerogative writ. Its mandate is, in its nature, law. It is issued only in the absence of legal remedy. In the nature of government, it becomes necessary that a power should be reposed somewhere, to enforce the performance of official duties, or they might be omitted, to the great prejudice of the rights of the citizen, or the body politic. Yet this necessary power should act within its proper sphere, and all proper guards should be thrown around it, to prevent its becoming an instrument of oppression.

There is only one other point in the practice, which we see proper to consider, and that is, how shall proceedings on mandamus come up to this court for review? If a prosecu-

tion by mandamus is a criminal action, as contended for by counsel for defendant in another branch of this case, the only mode by which it can be reviewed is by writ of error.  Code, § 3088.   The authority cited to support this position, we have been unable to find.   As cited in the digest, it decides that a mandamus is a criminal process, relative to civil rights. 3  U. S. Dig. 6, quoting *State* v. *Bruce*, Const. 165, 174.   It has ever been prosecuted on the crown side of the B. R., and by 6 and 7 Vic. chap. 67, § 2, a writ of error is given, but it provides that like proceedings shall be had thereon as in personal actions.   It is laid down by Stephens, in his Nisi Prius, 2291, that it is substantially a civil remedy for the benefit of the subject, and the king's name is only nominally used.   In the case of *The Commonwealth* v. *The Commissioners of Lancaster*, 6 Binn. 5, it is considered as not properly a civil action.   Our statute regulating the appellate jurisdiction of this court, provides that it shall have appellate jurisdiction over all final judgments and decisions of any of the District Courts, as well in cases of civil action, properly so called, as in "proceedings of a special or independent character."  Code, § 1555.   We have considered this question, and conclude that, although a proceeding under this writ, is a prosecution within the meaning of the constitution, yet that is not a criminal action within the definition of section 3088 of the Code, but a proceeding of a special or independent character, as defined by section 1555 above quoted; and hence this case is properly before us by appeal.

We have omitted to state, as we went along, what objections might be waived by subsequent proceedings, or what must be taken *in limine* to be availing, or how far amendments of the information, or alternative writ, are allowable; and, indeed, in the present state of the law, very difficult questions will arise on this subject.   The statute of amendments and jeofails, adopted January 24, 1839 (Rev. Statutes, 1843, 56), was expressly by that act extended over writs of mandamus.   This was repealed by the Code (§ 28), and the question that primarily arises, is, whether the provisions for amendments contained in the chapter regulating civil

proceedings, are applicable to this writ.   But on these ques-
tions we do not purpose to enter at this time, and reserve
them for future adjudication, when they shall properly come
before the court.

Notwithstanding the defects in these proceedings, and the
entire want of a case which we may properly consider, it is
thought proper that we should speak of the prosecutor's
title to the aid of this writ.   And here, we are compelled to
go back to the affidavit on which the alternative writ was
granted, in order to inquire into the prosecutor's right, as
shown by himself.   ·The first suggestion that arises is, that
the prosecutor seeks to perfect an inchoate contract.   We
have sought in vain for a precedent for this by the aid of
this writ; but we find, instead, several cases that would seem
to tend to the contrary.   *Ex Parte Percy,* 4 A. & E. 949;
*The People* v. *The Canal Board,* 13 Barbour, 432; Tapp. on
Mand. 91.   And, on principle, we doubt whether this can
be done.   But the prosecutor not only seeks to perfect
an inchoate contract, but that contract is one that shall bind
the State.   In the case of *The People ex rel. Andrew J. Yates*
v. *The Canal Board of the State of New York,* 13 Barbour,
432, which was an application for a peremptory mandamus
to be directed to the canal board, to act and approve or dis-
approve of contracts awarded to relator, the question arose,
that here arises.   Says CADY, J., "Although the motion is
in form against the canal board, it is, in effect, against ·the
people of the state.   The relator wants nothing of the canal
board, but to approve the contracts, and thereby bind the
people of the state."   In the case at bar, the relator wants
nothing of the fund commissioner, but to execute the contract,
and thereby bind the state.   After discussing the question
on authority, in the case last cited, the learned judge
says: "I have been unable to find any case in which, on the
application of an individual, a mandamus has been issued to
any officer of the government, commanding him to make a
contract with that individual, binding on the state."   The
issuing of a mandamus is, in effect, the commencement of an
action.   1 P. Williams, 351; *Kendall* v. *The United States,*

12 Peters, 615; *The People* v. *The Canal Board*, 13 Barbour, 439; *Reeside* v. *Walker*, *Sec. of the Treasury*, *U. S.*, 11 Howard, 272. In the case last quoted, which was an application for a mandamus, made by Mary Reeside, executrix of James Reeside, to be directed to Robert J. Walker, as Secretary of the Treasury Department of the United States, commanding him to enter upon the books of the Treasury Department a credit of $188,496.06 (the same being the amount found in favor of the deceased by a jury, in a case brought by the United States against him), and also commanding him to pay to said executrix said sum with interest, says WOODBURY, J.: "It is well settled, too, that no action of any kind can be sustained against the government itself for any supposed debt, unless by its own consent, under some special statute allowing it."—Quoting, as authority, *Briscoe* v. *Kentucky Bank*, 11 Peters, 321; 4 Howard, 288; 9 Howard, 399. Again, he says, "such being the settled principle in our system of jurisprudence, it would be derogatory to the courts to allow the principle to be evaded or circumvented." The state is no more suable in its own courts, than the United States. 13 Barbour, 439. But these cases, and the one at bar, must be distinguished from those cases which arise under the provisions of the constitution, that private property shall not be taken for public use, without compensation, and those where the statutes expressly create the liability of the state, and point out the manner of payment (6 Cow. 518), which liabilities may be enforced. And Mr. Justice WOODBURY, in *Reeside* v. *Walker*, further remarks: "Now, under these circumstances, though a mandamus may sometimes lie against a ministerial officer to do some ministerial act connected with the liabilities of the government, yet it must be when the government itself is *liable*, and the officer himself has improperly refused to act. It must, even then, be in a case of *clear*, and not *doubtful*, right." *The People* v. *Corporation of Brooklyn*, 1 Wend. 318; *The People* v. *Supervisors of Columbia County*, 10 Wend. 366; *The People* v. *Canal Board*, 13 Barbour, 444; Tapp. on Mand. 320.

But the relator, not only seeks to perfect an inchoate contract that shall bind the state, but from his own showing, he discloses, that other persons have become purchasers of the same lands, whom he does not charge with notice; and with regard to one of the tracts, the purchase was made of the present fund commissioner, who himself, had no notice. Now, in such a state of the case, it would appear, even if there was no question, that a mandamus would lie to enforce the right when once ascertained, that this forum is not the proper one to discover how the rights of the several parties, in fact, stand. To determine this question, a resort to equity, in the first instance, would be proper, to settle the right, even if it had to be enforced by this writ, when settled. And there can be no question, that if a mandamus will lie to settle and enforce the right, it would lie simply to enforce it, when settled. But has the relator, giving full force to his statements, and not regarding those that make against him, shown a clear right in point of *fact?* In the first place, he says that "sometime during the year 1853, to wit, on the 24th day of December, 1853" (this statement under a *videlicit*, is not warrantable), he "entered" the lands, by paying one-fourth of the price at which said lands were offered for sale in cash." Now, we are not aware, that the term "entered" has obtained with regard to the purchase of the school lands of the state; but if it has, it implies the doing of all which is requisite to be done on the part of the purchaser, to entitle him to a patent. But the relator does not mean that he has done this, when he says that he did so, by paying . one-fourth of the purchase money. If not, what were the terms of the purchase, that are sought to be enforced? It will not do to point us to section 1050 of the Code, as counsel have done, and say that they are those pointed out; for, under certain circumstances, which are not negatived, section 1054, requires, that those terms should be varied, either by exacting all of the money down, or by requiring collateral security. The party may say, that he has set forth that he offered to pay all afterwards. Admitted, and what follows? Not that he would now be entitled to a

mandamus to certify, without paying, which he evidently claims. Again: no request to perform the specific thing which the court may properly be called upon to compel, sufficiently appears. And whether the offer to re-instate the party in his rights, nine days after the money was deposited, by refunding it, was not a remedy offered, adequate under the circumstances, *quere?* If the relator himself was not, up to that time, bound, to take the land, and pay the residue of the purchase money, which does not appear, nor any reason given for not perfecting the contract, at the time of the deposit, was it not still the right of the commissioner, to claim that *he* was not bound, on re-instating the party? If the contract was not in fact made—its stipulations determined—there can be no question that this writ will not lie to make it; for a contract, in its essence, implies a mutual assent of minds, which no court, by this writ, or any other, can effect.

But, again: has not the party a plain and adequate remedy at law, on the bond of the former commissioner, if the contract was in fact made, as claimed; for it was clearly his duty to make a record of his doings on the sale of the land, which was not done. His bond (Code, § 324) is conditioned, among other things, that he will faithfully and impartially, without fear, favor, fraud or oppression, discharge all other the duties now or hereafter required by law. And section 336 provides, that the bonds of officers shall be construed to cover duties required by law subsequent to giving them, while section 2146 declares, that "the individual injured by breach of such bond, may sue thereon in his own name, or in the name of the obligee." See, also, sections 2145 and 1693. How far the superintendent of public instruction, is the proper visitor in relation to the sale of school lands, we have not attempted to inquire. Without examining further, we are forced to the conclusion, that the writ being one of grace, and not of right, under all these circumstances of doubt, should have been refused.

Order awarding a peremptory writ reversed, and alternative writ quashed.