Welch v. The Board of Supervisors, etc.

## WELCH v. THE BOARD OF SUPERVISORS, ETC.

1. **Publication of laws:** BOARD OF SUPERVISORS: STATUTE CONSTRUED. Where laws have been once published in a newspaper, selected therefor by the board of supervisors, in accordance with chapter 118, Laws of 11th General Assembly, and which was then the only newspaper published in the county, the board have not the power at its January session of the following year, to order their publication again in another paper established subsequently to the first.

2. —— WHERE NO PAPER IS PUBLISHED. And it seems that if no paper is published in the county at the time when the board is by law to make the selection, it cannot thus subsequently order them published in a paper afterward established.

3. —— PROCEEDINGS OF THE BOARD. But as to the proceedings of the boards of supervisors, also provided for by said act, *their* publication may be ordered at a session subsequent to the one at which the board are to act in the publication of the laws.

4. —— RIGHT OF ACTION. The proprietor of a newspaper has no such private or personal interest in the publication of such laws and proceedings, as that he can in his own name maintain an action to compel, by mandamus, the board to order such publication in his paper.

*Appeal from Mahaska District Court.*

WEDNESDAY, JULY 31.

MANDAMUS. — Upon the issues joined, the court found the following facts:

1. At their June session, 1866, the board of supervisors of Mahaska county selected the " Oskaloosa Herald," the only newspaper then published in the county, as the paper in which should be published the laws and proceedings of the board, as required by chapter 118 of the Acts of the 11th General Assembly, and said laws and proceedings were accordingly so published.

2. August 2, 1866, plaintiff commenced the publication of a newspaper in said county, devoted to politics and news, has continued such publication, is the editor and proprietor thereof, and that he had, in January, 1867, eight hundred *bona fide* subscribers.

3. About the 1st of January, 1867, the publication of another paper was commenced, to be issued monthly, devoted especially to the cause of temperance; that this publication has been continued, having, since its commencement, a circulation of about one thousand. The paper mentioned in the second paragraph was a seven column quarto; the last, a five column quarto sheet.

4. These are the only publications in said county claiming to be newspapers.

5. At the January session, 1867, plaintiff demanded of the board, that they select and designate his paper as one in which should be published the general laws of the 11th General Assembly and the future proceedings of the board, which demand was refused.

6. At the same session, the board selected the paper mentioned in the third paragraph, as one of the two hav-

ing the largest circulation, and directed the publication therein of said laws and proceedings, and the said paper proceeded with said publications accordingly.

And based thereon were these conclusions:

I. That the board, having in June, 1866, selected the only paper then published in the county, and caused to be published therein, the said laws and proceedings, had no legal right in January, 1867, to select another paper established subsequently, and cause said laws to be published therein.

II. That the paper selected in January, 1867, was not a newspaper within the spirit and intent of said chapter 118.

III. The statute providing for the publication of the laws, etc., was enacted for the public good, and not for private benefit; that the refusal of the board to select petitioner's paper was not the violation of a *private* right secured by law; that he is not, in the legal sense, a party aggrieved by said refusal, and, therefore, is not entitled to the writ of mandamus.

Peremptory writ refused; plaintiff excepted to the first and third conclusions of law, and defendants to the second. Plaintiff appeals.

*Seevers & Williams* for the appellant.

*M. E. Cutts* for the appellees.

WRIGHT, J. — The act upon which plaintiff relies (ch. 118, p. 9, 125, Laws of the eleventh general assembly,

1. PUBLICATION OF LAWS: board of supervisors: statute construed. passed, April 2, 1866), provides, that the boards of supervisors of the several counties, shall, at their meeting in the month of June, 1866, and thereafter, at each regular meeting in the month of January, select two newspapers having the largest circulation, or one, if but one be published in

the county, in which said paper or papers, shall be published all general laws enacted by the present and future general assemblies. The Secretary of State is to furnish to the clerks of the several boards of supervisors printed slips of the laws, and the said clerks are required to deliver the same to the newspapers so selected, for publication. In the paper so selected is to be published all the proceedings of the board. Claims for publishing the *laws*, are to be audited and paid by the State; all others by the several counties.

Construing this statute, our opinion is, that as but one paper was published in Mahaska county, in June, 1866, the board was not bound, nor had it the power to select another, the publication of which was subsequently commenced, in January, 1867, and therein order or allow the publication of the laws of the eleventh general assembly.

If no paper had been published in June, and two or more had afterward started, they could not in January, 1867, make the selection and direct such publication. The reason and policy of the law is at war with the exercise of such power. It was deemed advisable to give the laws an early general circulation. As to those passed in 1866, no paper could be selected until in June. Soon, thereafter, they were published and circulated in book form. They were thus placed before the people, and the public interests could in no manner be subserved by a further publication after January, 1867. It is as though there should be but one paper published in a county the ensuing January, and therein at that time, the board should order the publication of the laws of the ensuing (12th) General Assembly. This done, the board could not in January, 1869, order a publication of the same laws in a paper started in August, 1868. And as to laws of 1866, they had no more power in January, 1867, than they would in the case supposed in 1869.

2. —— where no paper is published.

But plaintiff claims that whether he had the right to publish these *laws* or not, the board was, nevertheless, from the facts found, bound to select his paper,
**3. —— proceedings of board.** in which should be published their proceedings, if not laws subsequently passed. Our opinion is, that for such purposes, the power was not at an end by the action of the board in June, 1866.

The question is, however, whether plaintiff could by this proceeding enforce its exercise, and especially whether
**4. —— right of action.** under the facts, the board was bound to select his paper. Whether, as matter of law, the organ selected in January, 1867, was a *newspaper* within the meaning of the act, we do not stop to inquire, for however this may be, the affirmance of this cause, in our opinion, may be incontestibly placed upon the following ground: Plaintiff was not so personally interested in the order asked, sustained no such injury by its refusal, is not a party aggrieved in such sense as entitles him to a suit in his own name and for himself, to enforce a compliance with the law. Rev. 3761, 3762. The law was made for the *public* good (at least we are bound so to presume) and not for the benefit of any individual. No publisher has such a vested personal interest in enforcing its provisions, that he can thus resort to the courts, and compel the board to select his paper, and have these laws published therein. The duty is imposed upon the board; they are the custodians of the power, but no one can insist upon its performance or exercise, because he happens to be at the time the owner and proprietor of a newspaper. As well might any citizen claim that without such publication he had no means of knowing the law; that he took no other than plaintiff's paper, that it had the largest circulation, and, therefore, he was so aggrieved as that he, for himself, could compel the exercise of the

power. The State made no covenant or agreement with plaintiff that he should publish the laws.

To illustrate, the law (§ 764) makes it the duty of the county treasurer to publish the tax sales of each year in a newspaper. So of the sheriff, to publish notices of sales of real property under execution in some paper of his county. § 3311. Then, an executor, in selling real estate at public auction, must make publication as required of the sheriff. § 2380. And other similar cases might be put. Now suppose plaintiff's was the only newspaper of the county, could he, by mandamus, compel the treasurer, sheriff and all executors to make the required publication in his columns? There can be but one answer to such an inquiry. These officers might be guilty of a very great neglect of duty, might be responsible in damages to one aggrieved by such neglect; they might suffer in public estimation and be held responsible before the people, but the plaintiff would have no such interest or right in the exercise of these duties, as to compel the publications.

In a word, the difficulty with plaintiff's case is, he has no clear, legal or equitable right to any thing sought to be enforced by this suit. His right is not immediate to the subject-matter; and his interest, if any, is so remote or foreign to the object and policy of the statute, that he should not be heard in this method to seek its enforcement. Tapping on Mandamus, 28, 388; *People* v. *Canal Board*, 13 Barb. 432; *Chance* v. *Temple*, 1 Iowa, 179; *State* v. *County Judge*, 2 Id. 280.

Affirmed.