## Smith v. Yoram *et al.*

1. **Publication of laws: SELECTION OF NEWSPAPER.** The proprietor of a newspaper has no such private or personal interest in the publication of the laws of the State and proceedings of the board of supervisors, under chapter 118 of the Laws of 1866, as amended by chapter 11, Laws of 1872, as that he can maintain an action or proceeding in his own name to compel the board of supervisors to order such publication in his paper. Following *Welch* v. *The Board of Supervisors*, 23 Iowa, 199.

2. —— In determining the question as to what papers have the largest circulation, the board are not confined to the affidavits of newspaper proprietors, but may consult all available sources of information open to them.

3. ——Whether in any case the decision of the board in designating the papers in which publication is to be made, so far as that depends on the circulation of competing papers, can be reviewed, *quere*.

*Appeal from Jones Circuit Court.*

THURSDAY, SEPTEMBER 18.

THIS is a proceeding by *certiorari* to remove the record and correct the proceedings of the board of supervisors of Jones county in the matter of selecting a newspaper in said county in which the laws and proceedings of the board should be published for 1873.

The circuit court annulled the action of the board of supervisors in the premises, and ordered that they proceed to rehear the matter at their next regular meeting.

Defendants appeal.

*Scott & Ercanbrack* for the appellants.

*J. L. Shean, S. T. Pierce* and *G. W. Field* for the appellee.

MILLER, J. — The record shows that the plaintiff filed a written application with the board of supervisors, stating that he was the publisher and proprietor of a weekly newspaper published at Anamosa, in Jones county, Iowa, called the "Anamosa Journal," which had been so published since the 15th day of March, 1872; that said newspaper had been published, in all respects, in compliance with the requirements of chapter 11, acts of the 14th General Assembly, to entitle it to be selected as one of the newspapers in which to publish the laws and the proceedings of the board of supervisors for the year 1873; that said newspaper had an actual *bona fide* circulation of 1,120, and the largest circulation of any newspaper in the county.

It was also shown, by affidavits, to the board that the "Anamosa Eureka" had a circulation of about 1,086, and that of the "Monticello Express" a circulation of 1,263, both of which papers were published in Jones county, the former at Anamosa and the other at Monticello.

This seems to have been all the documentary evidence submitted to the board, and from these three papers they " selected, as the county papers to print the proceedings of the board and the session laws," the *Anamosa Eureka* and the *Monticello Express.*

The circuit court set aside and annulled this action of the board of supervisors, and ordered that they proceed to rehear the matter. Appellants assign this ruling as erroneous.

Section 1 of chapter 118 of the Laws of 1866 provides : " That the boards of supervisors of the several counties shall, at their meeting in the month of June, 1866, and thereafter at each regular meeting in the month of January, select two newspapers having the largest circulation, or one, if but one be published in the county, in which said paper or papers shall

be published all general laws enacted by the present and future general assemblies."

This provision of the statutes received judicial construction in *Welch* v. *The Board of Supervisors of Mahaska county*, 23 Iowa, 199, and it was there held that the proprietor of a newspaper has no such private or personal interest in the publication of the statutes and proceedings of the board of supervisors, as that he can maintain an action in his own name to compel the board to order such publication in his paper. It is there said that "the law was made for the *public* good (at least we are bound so to presume), and not for the benefit of any individual. No publisher has such a vested personal interest in enforcing its provisions, that he can thus resort to the courts, and compel the board to select his paper and have these laws published therein. The duty is imposed on the board; they are the custodians of the power, but no one can insist upon its performance or exercise because he happens to be at the time the owner of a newspaper."

These views are decisive of this case, unless there has been some change in the law, in this particular, by legislation subsequent to the decision quoted.

The only subsequent legislation touching the subject to which our attention has been called, is found in chapter 11 of the Laws of 1872. The first section provides that the term "newspaper," as used in chapter 118 of the Laws of 1866, shall be held to apply only to such newspapers as are actually printed and issued in the counties by whose boards of supervisors they are selected to publish the laws and proceedings; "*Provided*, that this act shall not apply to such papers as have one side printed on the co-operative plan," but one side must be actually set up, imposed, and the press-work thereon done in the county where the same is dated and issued, in a printing office actually provided and equiped with the usual type, etc., necessary to print a paper of the size and grade claimed by papers which apply to boards of supervisors for printing the laws, etc., under chapter 118 of the acts of 1866.

By the second section it is made the duty of the board to

" seek evidence under oath," that the paper is printed, etc., in the county as required in the first section, and it is unlawful for the board to select any paper in which to publish the laws and their proceedings, that has not complied with the provisions of the act, as enumerated in the first section.

It is very evident that this act in no manner affects the question involved in this case. The board is *directed* to select two papers having the largest circulation. The power to determine this matter of circulation is conferred upon them. The statute makes no provision as to the character or the sources of evidence upon which this determination shall be made. It is entirely silent as to how the board shall be informed as to the extent of the circulation of the respective papers applying for the printing. It follows, therefore, that the board is not limited to and bound by the *ex parte* affidavits filed before them by the respective proprietors of county newspapers. All other sources of information are open to them, so that even if the plaintiff had such an interest as to enable him to maintain this proceeding, we cannot say upon the affidavits of the respective publishers, which is all the evidence in the record, that the board did not decide correctly, for they may have had other evidence not of record, and which probably controlled their action.

Again, it may be doubted whether in any view that may be taken of the case, the courts are authorized to review and revise a decision of the board of supervisors, designating the newspapers in which the laws and their proceedings shall be published, so far as that decision depends upon the circulation of the respective papers ; but this we do not at present decide, since the judgment of the circuit court must for the reasons above stated be

Reversed.