The People agt. N. Y., L. E. and W. and N. Y. C. and H. R. R. Cos.

# SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. THE NEW YORK, LAKE ERIE AND WESTERN AND THE NEW YORK CENTRAL AND HUDSON RIVER RAILWAY COMPANIES.

*Railroads — Mandamus will not issue on the application of the attorney general to compel a common carrier to discharge his duties as such.*

The neglect or refusal of a railroad corporation to receive and transport freight tendered to it by citizens of this state, is a private wrong for which the citizen is entitled to recover in an action at law such damages as he has sustained. It is not such a public wrong as will authorize the issuing of the writ of *mandamus*.

The writ of *mandamus* is a high prerogative writ which will only issue to compel the performance of a duty that is clear and distinct. It will not issue in dubious and doubtful cases. It will only issue where there is no adequate or complete remedy at law.

*Special Term, July,* 1882.

RETURN of an order to show cause why a peremptory writ of *mandamus* should not issue to compel the corporation to exercise its franchises, and to receive and transport freight upon such terms as are reasonable and usual, and to perform its duties as a common carrier, &c. The respondent moves to quash.

*Leslie W. Russell,* attorney-general.

*E. J. James, Simon Sterne* and *Daniel G. Thompson,* for the people.

*W. D. Shipman* and *Roscoe Conkling,* for respondent.

HAIGHT, J. — The petition upon which the peremptory writ of *mandamus* is sought, in substance alleges that the respondent is a railroad corporation existing under the laws

of the state, and is subject to all the duties and obligations imposed by law upon railroad corporations. That the corporation is a common carrier of freight and passengers. That since about the 16th of June, 1882, it has substantially refused to discharge its duties as a common carrier, and has, to a material degree, suspended the exercise of its franchises by refusing to take freight which has been offered at its station in the city of New York for transportation. That it has refused to accept and transport the greater part of the outgoing, and to deliver the incoming freight, the property of the merchants doing business in such city. That it has neglected and refused to furnish sufficient and adequate transportation for the goods of such merchants, whereby great loss and damage has accrued to the people of the state, for which there is no adequate remedy in damages. That the trade and commerce of the city of New York is greatly injured by reason of the failure of such corporation to transport such goods and property. That the reasons for the refusal of such corporation to accept, transport and deliver freight and property, is that the persons heretofore in their employ handling freight refused to perform their work unless an advance of three cents per hour over the wages that they have heretofore received shall be paid them by the respondent.

Some of the questions presented upon this application are new and of vast importance. The conflicts that from time to time arise between capital and labor present the most serious and difficult problem that the government at the present day has to solve. It is the duty of the court to guard and protect to the uttermost every right of the poor man who is compelled to support himself and family by manual labor; and when an opportunity presents, and in a proper case, this court will not be slow to act in his behalf. But in this proceeding it is powerless to aid him. The court has not the power to prescribe a scale of wages. It has not the power to say that he shall work for one dollar and seventy cents per day, or that his employer shall pay him two dollars per day. Hitherto the

amount of wages to be paid has been left to the parties to determine by contract, express or implied. If the power exists at all to change the law in this regard, such power rests in the legislative and not in the judicial branch of the government.

The questions presented upon the motion to quash the proceedings are purely legal and do not involve the merits. The first question presented is: Will the writ of *mandamus* issue on the application of the attorney-general to compel a common carrier to discharge his duties as such?

A franchise is a grant of a right or privilege to an individual or individuals, or a corporation, by the government or sovereign power. The right to maintain highways, ferries and bridges to facilitate communication between different parts of the state, rests in the government or sovereign power. And those rights can be exercised by others only under grant or authority of the state.

The state has conferred upon the respondent the right to build, maintain and operate a railroad for public use in the conveyance of persons and property for hire. It has also conferred upon it the right of eminent domain. The right to construct a road from and to the place or places named in the charter, the maintaining and operating of it for the public use, pertains to the government, and the government is therefore interested in and has the power, through its attorney-general, to compel the exercise of the franchises so conferred upon the respondent by the writ of *mandamus*. It has accordingly been held that the writ of *mandamus* will issue to compel a railroad corporation to operate the whole road as one continuous line (*P. R. R. Co.* agt. *Hall*, 91 *U. S.*, 243); to compel the running of passenger trains to the terminus of the road (*State* agt. *Hartford and N. H. R. R. Co.*, 29 *Conn.*, 538); to compel a corporation to deliver grain at an elevator standing upon the line of the road consigned to it in bulk (*Chicago, &c., R. R. Co.* agt. *The People*, 58 *Ill.*, 365); to compel it to run daily trains (1 *P. & B., New Brunswick,*

367); to compel the replacement of a track taken up in viola-
tion of its charter (*King* agt. *Severn R. R. Co.*, 2 *Bar. &
Ald.*, 344); to compel it to construct its road across streams so
as not to interfere with navigation (*State* agt. *Northern R. R.
Co.*, 9 *Ritch*, 247); to compel it to build a bridge (*People* agt.
*B. and A. R. R. Co.*, 70 *N. Y.*, 569).

It is contended, however, that whilst the writ will issue to
compel the exercise and discharge of those duties which belong
to the state or government, and which are conferred upon the
respondent by the state, that it will not issue to compel a com-
mon carrier to discharge his duty as such.

One of the duties imposed by law upon railroad corporations
is that of common carrier. The statute provides " that every
such corporation shall start and run their cars for the transpor-
tation of passengers and property at regular times to be fixed
by public notice, and shall furnish sufficient accommodation
for the transportation of all such passengers and property as
shall, within a reasonable time previous thereto, be offered
for transportation.

The right to become a common carrier of passengers and
property for hire, does not pertain to or emanate from the
government. Every citizen, without grant or license, has the
right to carry persons or property from point to point within
the state, upon such terms or for such compensation as shall
be agreed upon. The liability of a common carrier of property,
is that of insurer of the property, except in cases of loss or
destruction by the act of God or public enemies. Ample
and complete remedies are provided for the recovery of all
damages that the shipper or consignee may sustain through
the fault or negligence of the common carrier. In the case
of *The People* agt. *Susquehanna R. R. Co.* (57 *N. Y.*, 161),
the court of appeals said : " The people of this state have no
general power to invoke the action of the courts of justice by
suits in their name of sovereignty for the redress of civil
wrong sustained by some citizens at the hands of others.
When the people come into court as plaintiffs in a civil action,

they must come upon their own rights for the relief to which they themselves are entitled.  It is not enough for the people to show that wrong has been done to some one.  The wrong must appear to be done to the people in order to support an action by the people for redress."

It has been also held that the neglect or refusal of a common carrier to transport or deliver freight according to the law governing the duties of such carrier, is a private wrong to the particular shipper or consignee concerned, and redressible by suit at the instance of such shipper or consignee, and that it is not such a public wrong as will authorize a suit by and on the part of the state (*People* agt. *Minor*, 2 *Lans.*, 396).

*Morawetz on Private Corporations,* at section 496, says: " The duties which devolve upon railroad companies by reason of the exercise of powers conferred by the government for public purposes must not be confounded with their obligations as common carriers for hire.  A railroad company is under obligations to the public to operate its line of road, because the road was constructed with the public aid for a public purpose.  The usual duties of a common carrier then attach by virtue of the employment in which the company is engaged. If the company neglects to operate the road which it has built, this is an injury to the public in general, and redress can be obtained only through the state by writ of *mandamus*. But the duties of a railroad company as a common carrier for hire may be enforced by any person injured, through the usual remedy by action for damages (*See, also, secs.* 486 *and* 487; *also ex parte Robbins,* 7 *Dowling's Rep.*, 566).

The case of *The People ex rel. Ohlen* agt. *The Respondent's Corporation* (*reported in* 22 *Hun*, 533) was decided by the general term of this department.  An alternative writ of *mandamus* had been issued upon the application of the attorney-general on the relation of Ohlen, to require the defendant to receive and carry crude oil for the relator on its tank cars, from a place called Carrollton to a place called Weehawken Docks, on the defendant's road; and the usual

compensation for such transportation was tendered to the defendant's company. The alternative writ was quashed at special term, and on appeal it was held that the railroad company wrongfully refused to receive and transport the oil tendered to it, but that the remedy of the party aggrieved was by an action at law. That such remedy was appropriate and adequate, and that a *mandamus* compelling this company to receive and transport such oil should not be granted. This decision establishes the law, upon the question considered, in this department, and this court is bound by it.

If a *mandamus* cannot issue upon the application of the attorney-general on the relation of the party aggrieved, to compel the respondent to carry his freight, how can it issue on the application of the attorney-general alone?

From my examination of the authorities bearing upon the question, I have come to the conclusion, that the neglect or refusal of a railroad corporation, to receive and transport freight tendered to it, by citizens of the state is a private wrong for which the citizen is entitled to recover in an action at law such damages as he has sustained. That it is not such a public wrong as will authorize the issuing of the writ of *mandamas*. The writ of *mandamus* is a high prerogative writ which will only issue to compel the performance of a duty that is clear and distinct. It will not issue in dubious or doubtful cases. It will only issue when there is no adequate or complete remedy at law.

There is still another reason why the writ asked for cannot be granted. The order to show cause asks that the respondent's corporation be required to forthwith resume the discharge of its duties as a common carrier, and also forthwith resume the exercise of its franchises by promptly receiving, transporting and delivering all freight and other property as may be offered to or hereafter received by such company, &c.

Section 28 of the General Railroad Act, as amended by chapter 133 of Laws of 1880, provides that every corporation formed under this act shall have power " to regulate the time

and manner in which passengers and property shall be trans-
ported." Under this statute a discretion is given to the cor-
poration to regulate the time and manner for transporting the
property that shall be tendered to it. Doubtless this discretion
must be exercised reasonably, and so as not to cause damage
to shippers or consignees. This discretion seems to be neces-
sary. Many kinds of property are presented for transporta-
tion. Some have to be transported with great dispatch, as in
the case of live stock, fruits, vegetables and articles of a
perishable nature. Imperishable freight must of necessity
give way to perishable articles. Again, large and unusual
quantities of freight oft times are presented in a single day
without notice to the corporation. Reasonable time must,
therefore, be given to enable the company to get its cars to
the place of delivery and transport the same.

The writ of *mandamus*, when it is issued, must clearly and
distinctly state the acts or duties which are by it commanded
to be performed, so that the party to whom it is addressed
may distinctly understand what he is to do. If he fails or
neglects to perform, an attachment will issue against him, to
the end that he may be adjudged in contempt of the process
of the court. It is not in the power of the court to look into
the future and determine the kinds and quantities of freight
that will be hereafter presented for transportation, and by an
order specify how and in what manner the same shall be
carried, or what kinds shall take preference.

The motion to quash must be granted.