PEOPLE *ex rel.* FRANCIS *et al. v.* CITY OF TROY.

(*Supreme Court, General Term, Third Department.* July 2, 1888.)

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF CHARTER—OFFICIAL NEWSPAPERS.
    The provisions of the charter of Troy (Laws N. Y. 1884, c. 237) requiring the council to designate not more than four official newspapers for the city, selecting the one or ones having the largest circulation therein, to be determined after having had the oaths of the publishers thereto, and after an inspection of the books of their offices, are mandatory, and must be followed.

2. SAME—CERTIORARI—WHEN LIES.
    In case the city council disregard such provisions, and make the designation without requiring such evidence, *certiorari* will lie, at the relation of a publisher claiming the largest circulation for his paper, who was so designated by a former order, and who, under the law, would hold over upon the failure of the council to designate for the current year, to annul such designation, and to require the council to conform to the provisions of said charter.

*Certiorari* to an order of the common council of Troy.

*Certiorari*, upon petition of relators against the mayor and common council of the city of Troy, to review the determination of the common council whereby they designated as official newspapers four papers published in the city, upon the ground that the designation was made without requiring the evidence that such papers had the largest circulation within the corporate limits of the city, and because the common council refused to require such evidence; the relators claiming, before such common council, and submitting an affidavit to support their claim, and offering the evidence prescribed by the charter, that their paper had the largest circulation, and was entitled to the designation.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*Lewis E. Griffith,* for relators. *R. A. Parmenter,* for defendant.

LANDON, J. Under the charter of the city of Troy, (chapter 237, Laws 1884, p. 298,) it became the duty of the common council, at its second regular meeting after the general election in 1887, to designate not to exceed four

newspapers published in that city, having the largest circulation within its corporate limits, as official newspapers. The charter requires that, before making such designation, the common council shall require the oath of the publishers of such designated newspapers, and the business records of their offices for the preceding three months, as confirmatory of their actual circulation. The common council made the designation of four newspapers without obtaining or without requiring the confirmatory evidence of actual circulation which the charter requires. The relators are the publishers and proprietors of a newspaper called "The Troy Daily Times." They allege in their petition that their paper is published in that city, and at the time of such designation had, and for many years has had, the largest circulation of any daily newspaper within the corporate limits of that city; that, at the meeting of the common council at which the four newspapers were designated, the relator caused to be presented a written claim that the said Troy Times then had the largest circulation, within the corporate limits of the city, of any daily newspaper, and they submitted an affidavit so stating, and stating the amount of its circulation, and they offered to make oath to their circulation, and to produce the business records of their said office for the three preceding months. A resolution was also offered by Mr. Halligan, a member of the common council, to the effect that, before making the designation of official newspapers, the oaths of all the publishers of newspapers in the city of Troy be procured, and the business records of such newspaper offices for the three months preceding the designation of official newspapers be examined, as confirmatory of the actual circulation of such newspapers within the corporate limits of the city; but this resolution was lost, and the demand, upon being repeated in another form, was laid upon the table; and a protest against such designation, without the confirmatory evidence required by the charter, was also laid upon the table. The common council by their return attempt to justify their refusal to require the oaths of the publishers of the newspapers, and the business records of the newspaper offices, as prescribed by the charter, as follows: "A large majority of the common council, to-wit, seventeen members thereof, believed that the provision of the city charter respecting the designation of official newspapers, which authorized the examination by the board of the business records of such newspapers, and the procurement of the oath of the publishers thereof, was permissive only, and not mandatory on the part of the common council; and having, through their said committee on printing, previously ascertained to their satisfaction that the newspapers known as 'The Troy Daily Press,' 'The Troy Sunday Observer,' 'The Ray,' and 'The Troy Morning Telegram,' by reason of the extent of their circulation within the corporate limits of the city of Troy, were entitled to be designated as such official newspapers, did thereupon vote down the said motion of Alderman Halligan, and proceeded by a vote of seventeen to nine to make such designations, and by voting upon one newspaper at each and every call of the roll."

We thus see that the common council intentionally disobeyed the provisions of the statute relative to the procurement of the confirmatory evidence of the actual circulation of the newspapers designated. It is not needful to determine that an adherence to the statute would have resulted in the designation of the relators' newspaper. It was the duty of the common council, before designating any newspaper, to make the statutory examination with respect to the relator's newspaper. The opportunity was offered; and if the examination had been made, for aught we know, the common council could not have escaped appointing it,—certainly not if, as is claimed, its circulation within the corporate limits would have been duly shown, by the confirmatory evidence, to be the largest of all. The common council is the creation of the statute, and its powers and duties are thereby defined. When, therefore, the statute commands that this body shall designate not to exceed four newspa-

pers published in said city, and having the largest circulation within its corporate limits, that command is both permissive and mandatory. It commands that at least one shall be designated, and it permits the designation of four. But it commands that, whether one or four, the designated paper or papers shall have the largest circulation within the corporate limits. This is a fact to be determined judicially, not by partisan or personal preference. It is to be determined upon evidence. Under the former charter, no mode of ascertaining which papers had the largest circulation was pointed out by the statute. *People* v. *Common Council*, 78 N. Y. 35. The opportunity for partisan or personal preference in the determination of that fact was subsequently excluded by an amendment which prescribes the evidence, which these relators were willing to furnish. To say that the present requirement is no requirement, but only a privilege, is equivalent to saying that the common council can disregard the plain command of the statute. Such a position, under a government regulated as much as possible by law, and as little as possible by men, is wholly untenable. The office of the writ of *certiorari* is to correct an erroneous final determination of a judicial nature, made by officers vested with judicial functions, with respect to which no other remedy exists. Such is the character of this determination. Here the common council were required to decide a fact after procuring such evidence as the statute prescribed, and not to decide it without requiring the evidence. They refused to require the evidence, and did decide it without the evidence. A more palpable error is seldom presented for correction.

It is urged that, however gross the error, the relators have no standing to correct it, for the reason that the duty enjoined upon the common council is enjoined for the benefit of the public, and not of the relators; and that, if the members of the common council willfully fail in their official duty, they may be proceeded against by criminal prosecution. Without contesting their liability to criminal prosecution, and conceding that, if the relators sought a personal recovery against the members of the common council, the latter might find immunity under shelter of their judicial action, we think the relators have shown sufficient interest in this designation to entitle them to demand that erroneous action be vacated, and the way cleared for legal action. Offices are created for the public good; but the rights of the officer are recognized and enforced. It is a part of our scheme of government to secure the co-operation of private interest in demanding the observance of law. The relators have not merely that interest which is common to all the citizens of Troy, but they have that special interest which is peculiarly, and, if their allegations are true, exclusively, their own, in being entitled to the designation which the law commands and rewards. The law provides, not, it is true, for their interests, but for the interests of the public, that their claim to this designation and its emoluments shall be examined upon prescribed evidence, and, if found to be valid, shall be allowed.

Moreover, it appears by the return that the relators' newspaper was, in December, 1884, designated as one of the official newspapers of the city, and that it had continued to serve as such official newspaper down to the date of the designation made by the common council now under review. By chapter 319, Laws 1883, it is provided that, "whenever the common council shall neglect or fail to designate official papers in and for the city of Troy at the time and in the manner provided by law, then and in such case the newspapers appointed and designated as official newspapers for said city at the last preceding designation shall hold over and continue to act as the official newspapers of said city until such common council shall designate their successors in accordance with law." The relators, being in possession of the office, had the right to continue in it if the facts were such that the common council could not or did not, without violation of law, exclude them; and these facts they had the right to have determined within the safeguards which the char-

ter provides. We do not decide whether the relators' newspaper does hold over, or was entitled to be designated. What we do decide is that the designation was improperly proceeded with, and made in disregard of the requirements of law. Our order is that such designation be vacated and set aside, with costs against the city of Troy, but without prejudice to such immediate and proper designation as the charter requires.

The publishers of the newspapers which were designated have not availed themselves of the opportunity given them by section 2137, Code Proc., to be made parties to this proceeding. It appears that three of these newspapers were designated by the common council in December, 1884, and therefore cannot be displaced by this order. If they should be displaced by a subsequent designation of other papers by the common council, their right to be heard in a proper proceeding can then be urged and considered. The fourth newspaper, the Ray, was represented by counsel upon the application for the writ of *certiorari*. No occasion, therefore, exists for the court, in the exercise of its discretion, to make these publishers formal parties to this proceeding. As the mayor is not a member of the common council, and took no part in the designation, and had no voice, vote, or veto in the matter, no action of his is involved in this hearing. He is, however, required by the charter to authenticate the acts of the common council, and the Code provides that in such case the writ may issue to him. Section 2129. His certificate of the designation of the newspapers might constitute a *prima facie* right to the office. He cannot be injuriously affected. If his office imposes any action in furtherance of the designation, such action should abide the fate of the designation. We do not think it necessary to quash the writ as to him. Order and designation annulled, with costs against the respondents.

LEARNED, P. J., and INGALLS, J., concur.