The People of the State of New York ex rel. Press Publishing Company v. James J. Martin and Others, Commissioners, etc.

*Certiorari — where a board is authorized to act on the "best information" it can obtain.*

In a proceeding by certiorari to review the action of the police commissioners of the city of New York in designating certain newspapers, it appeared that the relator published in the city of New York a newspaper known as the *World;* that the defendants composed the board of police commissioners of the city of New York, and were authorized by statute to designate at least two newspapers in which were to be published a list of the candidates for election; that the statute provided for the selection by the board, under certain limitations, of the papers having the largest circulation in the city of New York, and that this was to be determined by "the best information the board can obtain."

The relator furnished certain evidence of the circulation of its papers, and on the last day, when the board was about to determine the question, furnished additional evidence (an affidavit) showing that it had the largest circulation.

*Held*, that the statute left to the board the decision as to what sources of information it might consider best, and did not restrict it to legal evidence.   (Follett, J., dissenting.)

That an affidavit presented at the last moment that the board had authority to act could not form the foundation of a reversal of its decision.

*Semble* (per Follett, J.), that the action of the board was judicial and subject to review; that the relator had a sufficient interest in the question to enable it to prosecute this proceeding, and that the fact that the time within which the lists were to be published had expired did not require a dismissal of the writ.

Certiorari issued out of the Supreme Court and attested November 2, 1892, directed to James J. Martin, Charles F. MacLean, John McClave and John C. Sheehan, as police commissioners of the city of New York, constituting the board of police commissioners of the city of New York, commanding them to certify and return to this court their proceedings in relation to the designation of four newspapers published in the city of New York for the publication of the list of all nominations of candidates for offices to be filled at the election to be held in the city of New York on November 8, 1892, with all things appertaining thereto, and any rules or regulations prescribed by the board of police commissioners of the city of New York relating to such designation, etc.

The statute under which the action sought to be reviewed was taken reads as follows :

" One of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the largest number of votes in the State, and another of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the next largest number of votes in the State.

" The clerk or board in selecting the respective papers for such publication shall select those which, according to the best information he can obtain, have the largest circulation within such county or city.   In making additional publications the clerk or board shall keep in view the object of giving information so far as possible to the voters of all political parties ; and in no event shall additional publications be made in two newspapers representing the same political party."

*J. M. Bowers*, for the appellant.

*G. L. Sterling*, for the respondent.

Vᴀɴ Bʀᴜɴᴛ, P. J. :

I cannot agree in the conclusion at which Mr. Justice Fᴏʟʟᴇᴛᴛ has arrived in the case at bar.

It will be observed that in the statutes considered and the cases cited by him the language was essentially different from the statute under which this proceeding arises. In the case of *The People* v. *Brennan* (39 Barb. 651), the language of the statute (Chap. 227, Laws of 1863, § 2) was : " No portion of the sums which shall hereafter be raised by taxes or assessments in said city and county of New York shall be paid for advertising, except the same shall have been incurred for advertisements in the newspapers authorized by the mayor and comptroller of said city, who shall designate four papers having the largest daily circulation, and any six others in their discretion, not to exceed ten in all." The mayor insisted that the term " daily circulation " meant the largest general circulation, and the comptroller that it meant the largest circulation within the city ; and the question discussed by the court was as to which of these contentions was correct.

It is true that in discussing the question it was said : " But as the determination of the question of fact which four papers have the largest daily circulation, involves the consideration of evidence, and an adjudication upon such evidence by the mayor and the comptroller, we do not see upon what principle a mandamus can issue commanding the comptroller to unite with the mayor in designating four certain papers, naming them in the mandamus." But, as already suggested, the language then under consideration was essentially different from the one under which this application arises.

By the law of 1863 the mayor and comptroller were compelled to designate four papers having the largest daily circulation. There was no provision as to what evidence or proof they should take, in order to establish the fact of circulation, and the courts held that they were bound to take evidence upon that point, which necessarily meant legal evidence, and to decide upon such evidence.

In the case at bar, the provision of the statute is, that the board in selecting the respective papers for such publication shall select those

PEOPLE ex rel. PRESS CO. *v.* MARTIN.     357

Hun.]          First Department, October 'Term, 1893.

which, according to the best information the board can obtain, have the largest circulation within said city, clearly giving the board the greatest latitude as to the sources from which information is to be derived, and expressly excluding the idea that legal evidence only could be acted upon. This statute was passed and this language was used, evidently because of the difficulties arising from the strict phraseology of the act of 1863 and other acts of a similar character; and it was the manifest intention of the Legislature to give the board greater discretionary powers than those which either of these previous acts had conferred.

So in the case of *The People ex rel. Francis* v. *Common Council of Troy* (78 N. Y. 33), section 3 of title 2 of chapter 813 of the Laws of 1873 was under consideration, which provided that the common council shall designate not to exceed four papers, having the largest circulation in the city, in which said advertising shall be done. And in that case it was held that no mode of ascertaining which papers have the largest circulation being pointed out, the question was left open as one of fact to be determined by the common council, and that the determination of such question of fact was a judicial duty, and though the common council might be compelled by mandamus to determine the facts, it could not be directed to decide in a particular way, however clearly it might be made to appear what the decision ought to be. It appeared in that case that the common council designated the papers without any evidence before it as to which had the largest circulation, and it was held that it was the duty of the council to make the designation on evidence, and that its duties were judicial and not ministerial.

But in the case at bar they are not restricted to evidence, but are to get the best information they may obtain, thus leaving it discretionary with the board as to what sources of information they may consider to be the best. Because the court is of the opinion that better information may be obtained, it cannot control the judgment of the board as to what it considers best.

And furthermore, in the case at bar, the relator had furnished proof which was clearly insufficient to entitle it to the designation; and at the last meeting of the board on the last day on which the designation could be made, they presented additional and amended affidavits claiming that the board, without having any opportunity

to test in any respects the statements therein contained, was bound to accept them in their entirety. I do not think, after this relator had presented its evidence, and the board was acting upon it, upon the last day in which it had any authority to act, that the presentation to it of an affidavit can form the foundation of a reversal of such action. Such a ruling would make it impossible for the board to guard against the presentation of alleged facts which might have no existence in reality, or to apply any ordinary tests to only alleged proof in order to ascertain its value.

I am of the opinion that the writ should be dismissed.

O'Brien, J., concurred.

Follett, J. (dissenting):

This is a special proceeding begun by a writ of certiorari, for the purpose of reviewing the final determination of the board of police in designating certain newspapers in which lists of nominations of candidates for offices to be filled at the general election of 1892 were to be published, and in refusing to designate the *World*, a newspaper published by the relators, as a paper in which such lists should be published, and in refusing to receive evidence as to which papers had the largest circulation.

No material disputed question of fact is presented by the writ, the papers on which it was granted and the return filed in obedience to the writ.

The *World*, the *Sun* and the *Daily News* are newspapers published in the city of New York which, preceding the general election of 1892, advocated the principles of the political (Democratic) party which at the last preceding election cast the largest number of votes in this State. The *Tribune* and the *Press* are newspapers published in said city which, preceding the election of 1892, advocated the principles of the political (Republican) party that at the last preceding election cast the next largest number of votes in the State. On the 6th of November, 1892, a general election was held in this State, pursuant to section 2 of chapter 680 of the Laws of 1892, the " Election Law." Prior to October twenty-fifth of that year certificates of nominations of candidates for offices, to be filled by the voters residing in the city of New York, were filed with the board of police commissioners of that city, pursuant to section 58,

and prior to that date the Secretary of State, pursuant to section 60 of said act, certified to said board the nominations for State offices to be filled at that election.

On the 6th of September, 1892, the New York Press Association, which publishes the *World*, filed an affidavit with the board of police, which stated that the *World* was a newspaper published in the city of New York ; that it advocated the principles of the political party that at the last preceding election cast the largest number of votes in this State ; that the paper had been published for several years, and that it had the largest circulation of any newspaper published in said city, in the State of New York or in the United States.

At a meeting of the board of police, held October 25, 1892, a resolution was adopted providing that the lists of nominations filed and certified, as aforesaid, should be published in the *Daily News* and the *Sun* newspapers, advocating the principles of the political party which at the last preceding election cast the largest number of votes in this State, and in the *Tribune* and *Press* newspapers, advocating the principles of the political party that at the last preceding election cast the next largest number of votes in this State.

It is alleged in the petition upon which the writ was granted that : " Said board of police commissioners of the city of New York, at the meeting of the said board on the 25th day of October, 1892, when said designation of four certain newspapers for the publication of the list of nominations above mentioned was made, refused to allow the production of evidence showing that the circulation of the *World* in the city of New York was larger than that of any other daily newspaper published in said city, and that its circulation was 75,000 in excess of that of the *Sun* or the *Daily News*, although such evidence was offered ; and that the said board of police commissioners of the city of New York, on said 25th day of October, 1892, refused to allow evidence to be produced showing that the circulation of the *World* was larger than that of any other newspaper published in said city, and that on said 25th day of October, 1892, no affidavit relating to the circulation of the *Sun*, the *New York Daily News*, the *Tribune* and the *New York Press*, or to the circulation of any other newspaper, except the affidavit hereto annexed and marked Exhibit 'B,' was on file in the office of the said Board

360    PEOPLE ex rel. PRESS CO. *v.* MARTIN.

FIRST DEPARTMENT, OCTOBER TERM, 1893.                    [Vol. 72.

of Police Commissioners in the city of New York, all of which appears by the affidavit of John Norris, hereto attached. Deponent further says that none of the four newspapers so designated as aforesaid are newspapers having the largest circulation within the city of New York."

This allegation, not being denied in the return, must be deemed to be true for the purposes of this review. (Code Civ. Proc. § 2138; *People ex rel. Peck* v. *Commissioners*, 106 N. Y. 64; *People ex rel. McLaughlin* v. *Commissioners*, Id. 676; S. C., 10 N. Y. St. Repr. 666.)

It is also alleged " that said Board did not obtain any information, as a Board, relative to the newspapers having the largest circulation within said city, other than that furnished by the affidavit of John Norris, a copy of which is hereto annexed, marked Exhibit ' B,' as deponent is informed and verily believed." Exhibit " B " is the affidavit filed by the relator September 6, 1892.

The commissioners in their return say : " The said Board, in selecting the respective papers for the said publication, selected those which, according to the best information it could obtain, had the largest circulation within the city and county of New York." A copy of the record of the proceedings of the board upon making the designation is set out in the return, and it does not appear that they acted upon evidence.

The principal questions involved in this controversy are : (1) Is the action of the board, under the statute, judicial, and so subject to review by this writ, or is it ministerial and, therefore, not reviewable in this proceeding ? (2) Has the Press Publishing Company sufficient interest in the determination to entitle it as relator to prosecute this proceeding ? (3) In case the first and second questions are determined in favor of the relator, should the writ be quashed because the time during which the lists were to be published has passed ?

It is well settled in this State that when an officer or board is authorized to act in a ministerial capacity, that he or it may be compelled to act by a writ of mandamus, but if the action involves the exercise of discretion, it is equally well settled that how the discretion shall be exercised cannot be controlled by the court. When the act is judicial, it is the subject of review by a writ of certiorari.

Whether the action is judicial or ministerial largely depends upon the question, must the determination be made upon evidence?

The following is the section of the statute (Chap. 680 of 1892) under which the designation was made:

"§ 61. *Publication of Nominations.*—At least six days before an election to fill any public office  *  *  *  the board of police commissioners of the city of New York,  *  *  *  shall cause to be published in not less than two nor more than four newspapers within such  *  *  *  city,  *  *  *  a list of all ,nominations of candidates for offices to be filled at such election, certified to such  *  *  *  board by the Secretary of State, or filed in the office of such  *  *  *  board.

"*  *  *  One of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the largest number of votes in the State; and another of such publications shall be made in a newspaper which advocates the principles of the political party that at the last preceding election cast the next largest number of votes in the State. The clerk or board, in selecting the respective papers for such publication shall select those which, according to the best information he can obtain, have the largest circulation within such  *  *  *  city. In making additional publications the  *  *  *  board shall keep in view the object of giving information, so far as possible, to the voters of all political parties; and in no event shall additional publications be made in two newspapers representing the same political party."

That the action of the board, under the section of the statute quoted, is judicial, seems to have been conclusively settled in this State.

Section 2, chapter 227 of the Laws of 1863, provided:

"§ 2. No portion of the sums which shall hereafter be raised by taxes or assessments in said city and county of New York shall be paid for advertising, except the same shall have been incurred for advertisements in the newspapers authorized by the mayor and comptroller of said city, who shall designate four papers having the largest daily circulation, and any six others in their discretion, not to exceed ten in all."

The mayor insisted that the term "daily circulation" meant the largest general daily circulation, and the comptroller that it meant the largest daily circulation within the city.  Upon the application of the mayor the Special Term granted a peremptory writ of mandamus commanding the comptroller to unite in designating four certain papers having the largest daily circulation.  The order granting the writ was reviewed at General Term (*The People* v. *Brennan*, 39 Barb. 651), where it was held that the duty imposed by the section above quoted was not ministerial, but judicial, requiring the consideration of evidence, and the writ was so modified that the comptroller was required to meet with the mayor and designate four papers having the largest general daily circulation.  In discussing the question it was said : " But as the determination of the question of fact, which four papers have the largest daily circulation, involves the consideration of evidence, and an adjudication upon such evidence by the mayor and the comptroller, we do not see upon what principle a mandamus can issue commanding the comptroller to unite with the mayor in designating four certain papers, naming them in the mandamus."

This case was reviewed at considerable length and approved in *People ex rel. Francis* v. *The Common Council of Troy* (78 N. Y. 33), which arose over the construction of a clause of section 3 of title 2 of chapter 813 of the Laws of 1873, which provided that : " The common council shall designate not to exceed four newspapers, having the largest circulation in the city, in which the city advertising shall be be done."

Upon proof that the Troy *Times* had the largest circulation in the city of Troy, a peremptory writ of mandamus was granted at Special Term, commanding the common council to designate that newspaper as one of those in which the city advertising should be done.  The order of the Special Term was affirmed by the General Term (17 Hun, 20), but it was reversed in the Court of Appeals on the ground that the duty imposed on the common council by the clause quoted was not ministerial, but judicial.  It was said : " No mode of ascertaining which papers have the largest circulation is pointed out by the statute, and consequently that question is left open as one of fact to be determined by the common council."

It was also held : " Where a subordinate body is vested with

power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be."

In the last case cited, as in the one at bar, the common council designated the papers without any evidence before it as to which had the largest circulation, and on the same day, but after the designation had been made, the proprietors of the Troy *Times* presented to the common council an affidavit showing that it had the largest circulation in the city, but that body refused to reconsider its action.

Under the statutes construed in the cases cited it was distinctly held that it was the duty of the boards to make the designations on evidence, and that their duties were judicial and not ministerial. The procedure by which the board of police must be guided in making its designation, is much more definitely pointed out in the statute under which they acted than was the procedure under either of the sections considered in the cases cited, and clearly indicates that it is the duty of the board to act on evidence.

The provision is: "The    *    *    *    board, in selecting the respective papers for such publication, shall select those which, according to the best information he (the board) can obtain, have the largest circulation within such    *    *    *    city."

The word "shall" is mandatory, and considered in connection with the context it cannot fairly be construed to mean "may." What shall the board do?   The language of the statute furnishes the answer:   (1) It shall determine which papers advocate the principles of the two political parties which cast the largest number of votes at the last election.   (2) Which of these papers have the largest circulation in the city.

How shall these questions be determined?   Again the statute answers the question.   Upon "the best information he (the board) can obtain."   The information is to be obtained, and it is to be the best.   The best information as to which of several newspapers has the largest circulation cannot, under any authority, legal or metaphysical, be intuitive, or evolved from the inner consciousness of the members of the board.   Neither have they any right to guess what the fact may be, but it is the duty of the board to obtain by inquiry, and receive such evidence as may be offered as to which newspaper

364    PEOPLE ex rel. PRESS CO. *v.* MARTIN.

FIRST DEPARTMENT, OCTOBER TERM, 1893.        [Vol. 72.

has the largest circulation. The best information can be acquired from persons having precise knowledge of the subject, and from the books of the publishers of the papers. Such evidence was offered to the board, but it refused to receive or consider it, and in doing so it violated a duty which it owed to the public, and, perhaps, which is the next question, a duty which it owed to the relator.

Has the relator a sufficient interest in the determination to entitle it to prosecute this proceeding? By chapter 237 of the Laws of 1884 the provision in the charter of the city of Troy, which was discussed in *People ex rel. Francis* v. *The Common Council of Troy* (*supra*), was amended so as to read as follows :

" The common council shall, at its second regular meeting after the general election in each year, designate not to exceed four newspapers published in said city, and having the largest circulation within its corporate limits, in which shall be published all the municipal advertisements, official notices, legal notices and the common council proceedings, including all advertisements and notices emanating from the common council, or from any department of the city government, or any officer of the city, except as is otherwise provided in section six of chapter thirty of the laws of eighteen hundred and eighty. The papers so designated shall be known as official newspapers. The oath of the publishers of said newspapers, and the business records of such newspaper offices for the three months preceding such designation, shall be required by the common council as confirmatory of the actual circulation of the said newspapers before such designation is made by the common council."

The common council, in defiance of this statute, designated certain newspapers without receiving any evidence as to which of the papers published in the city had the largest circulation therein. This action was taken on the theory that the statute was not mandatory. The publishers of the Troy *Times* obtained a writ of certiorari for the purpose of reviewing the action of the common council. It was alleged in the petition that the Troy *Times* when the designation was made, had, and for many years previously had, the largest circulation of any newspaper published in that city. The position was taken in behalf of the common council that the relators had not such an interest in the question determined as to entitle them to review it. In discussing this question the court said :

" It is urged that, however gross the error, the relators have no standing to correct it, for the reason that the duty enjoined upon the common council is enjoined for the benefit of the public, and not of the relators; and that, if the members of the common council willfully fail in their official duty, they may be proceeded against by criminal prosecution. Without contesting their liability to criminal prosecution, and conceding that, if the relators sought a personal recovery against the members of the common council the latter might find immunity under shelter of their judicial action, we think the relators have shown sufficient interest in this designation to entitle them to demand that erroneous action be vacated, and the way cleared for legal action. Offices are created for the public good; but the rights of the officer are recognized and enforced. It is a part of our scheme of government to secure the co-operation of private interest in demanding the observance of law. The relators have not merely that interest which is common to all the citizens of Troy, but they have that special interest which is peculiarly, and, if their allegations are true, exclusively, their own, in being entitled to the designation which the law commands and awards. The law provides, not, it is true, for their interests, but for the interests of the public, that their claims to this designation and its emoluments shall be examined upon prescribed evidence, and, if found to be valid, shall be allowed." (*People* v. *The City of Troy*, 2 N. Y. Supp. 114; S. C., 17 N. Y. St. Repr. 661.)

In this reasoning we concur. Upon the question of interest it is alleged by the relator, and the allegation is not denied in the return, that the publication of these lists " is of large pecuniary value to the paper that may be designated to publish the same, to wit, of the value of the sum of $12,880 and upwards, and the Press Publishing Company has been deprived by the aforesaid act of the Board of Police Commissioners of the city of New York of such pecuniary return."

The evidence shows that the *World* had a larger circulation than any other newspaper published in the city of New York, which, if true, with the undenied allegations referred to, establishes that it had a pecuniary interest in the determination of the question. Under the statutes which provide that soldiers shall be entitled to certain appointments in preference to those who did not serve in

the army, it has been repeatedly held that a veteran who had been refused an appointment, to which he was entitled under the act, has a sufficient interest in the question to review the action of the appointing power, though he is but one of a class upon whom the preference is conferred. Three Iowa cases ( *Welch* v. *Board of Supervisors*, 23 Iowa, 199; *Smith* v. *Yoram*, 37 id. 89; *The Iowa News Co.* v. *Harris*, 62 id. 501) are cited to sustain the proposition that the relator has not sufficient interest in the determination to entitle him to review it. In the case last cited it was said: "The public might suffer from the wrongful action of the board, but we are not able to see that the plaintiff would, unless we could presume that the compensation allowed would be over-compensation, and that we could not do."

The conclusion reached in this case, that a person has no interest in the performance of a service because it must be presumed that the compensation provided is an exact equivalent for the services, does not seem to us well founded. In the first place, the premise was not established, and, secondly, if it had been, it does not follow that a person has no right to redress when prevented from performing a contract or rendering service which he is entitled to perform or render, because the compensation is no more than a fair equivalent for the service. For the infringement of his right he is at least entitled to recover nominal damages, and the question as to how much he may recover is one quite apart from his right to maintain an action.

In *Welch* v. *The Board of Supervisors* (*supra*), it was said: "The duty (to designate the newspapers) is imposed upon the board; they are the custodians of the power, but no one can insist upon its performance or exercise, because he happens to be at the time the owner and proprietor of a newspaper." The correctness of this proposition is admitted. The person complaining must show, either that his paper should have been designated, or that he had been denied the right given by the statute, to have his claim to be so designated considered.

In *Smith* v. *Yoram* (*supra*), the opinion of the court upon this question rests solely upon the authority of *Welch's* case, no additional reasons being given. The judgment, however, is not placed solely on this ground. It is said: "All other sources of information are open to them (the board), so that even if plaintiff had such

PEOPLE ex rel. PRESS CO. v. MARTIN.    367

Hun.]            First Department, October Term, 1893.

an interest as to enable him to maintain this proceeding, we cannot say, upon the affidavits of the respective publishers, which is all the evidence in the record, that the board did not decide correctly, for they may have had other evidence not of record and which prob-ably controlled their action."

We think the relator had, in the case at bar, sufficient interest in the determination made by the board of police to entitle it to review the decision.

This brings us to the final question : Should the writ be quashed because the time during which the lists were authorized to be pub-lished has passed ?

The determination was made October twenty-fifth, and the writ was granted November 2, 1892, and the return was filed on the six-teenth of December following.   It is insisted in behalf of the board that this case falls within the principle of the decisions which hold that when a final determination has been so far executed that a judgment under a writ would accomplish nothing, it should be quashed.   This rule has been so frequently applied to proceedings under writs brought to compel the inferior tribunal to affirmatively perform a duty relating to a private right, that it may be said to be a well-settled canon of procedure in this State.

But the proceeding before us was not instituted solely for the purpose of compelling the board of police to order the lists printed in the *World*, but to obtain a reversal of an erroneous decision, which, when made, was injurious to the then existing rights of the relator, would be injurious as a precedent, and as a bar to proceed-ings, civil or criminal, against the members of the board, and it does not fall within the principle above stated.

In *People ex rel. Porter* v. *Tompkins* (40 Hun, 228), it was said : " When it (the writ) involves the inquiry whether the action and determination were legal, and should be set aside or confirmed, it may be seen that the writ may be effectual after the powers of the tribunal or officers have ceased, as to the matter in question, because it is a mere matter of review, but when the purpose of the proceed-ing is to have the direction of the court for those to whom the writ is issued, to do some act, by way of correction of an error, it must, we think, be within the power of such officer or tribunal to perform the act."

In *People ex rel. Seymour* v. *Canal Board* (7 Lans. 220), a writ of certiorari was issued to review the proceedings of the canal board in awarding the damages to the relator. The appraisers of canal damages had awarded the relator upwards of $4,000, which the canal board reduced by more than $1,000. After the writ was issued and before a return thereto was made, the canal board rescinded its resolution and vacated its modification of the determination of the appraisers. The point was taken that the writ should be quashed. It was held that, "The fact that since the issuing of the writ the canal board, recognizing the invalidity of the decision, has rescinded the resolution by which it was made, can have no effect upon the relator's rights in the premises. He has the same right to a judicial construction of the act complained of as before." The decision of the canal board was reversed and set aside as null and void.

In *The Matter of Bracket* (27 Hun, 605), a writ of certiorari was issued to review the conviction and sentence of the relator by a court martial. Before the hearing, the court martial amended its proceedings and revoked the warrant issued for the collection of the fine; notwithstanding, it was held that the relator was entitled to a judgment reversing the proceedings of the court martial, with costs.

In *People* v. *N. Y. C. & H. R. R. R. Co.* (28 Hun 543) — the freight case — a writ of mandamus was refused at Special Term. (63 How. 291.) On the review of the order at General Term it was insisted that the time had passed when anything could be ordered to be done under the writ. It was said: "It is suggested that the time has now passed when such a writ can be of any valuable effect. This is probably so, but we are governed by the record in disposing of the appeal and not by subsequently occurring events. The appellants labor now under a judgment alleged to be injurious to the rights they possessed when it was pronounced, and harmful to them as a precedent. If erroneous they are entitled to have that judgment reversed, and to be indemnified, in the discretion of the court, for the costs incurred on the appeal made necessary by the errors."

The determination of the board of police was voidable when it was made, and then affected the relator's pecuniary interests and denied a right, and the relator is entitled to have it set aside. The sole

object of this proceeding is, not to compel the board to correct an error by which the relator was pecuniarily injured, but its object in great part is to obtain a reversal of the decision of the board refusing to receive evidence and determine the rights of this relator and of all others similarly situated, upon evidence, so that in the future the duty which the board owes to the public and to all persons and corporations having a pecuniary interest in its determination, will be discharged in accordance with the statute. Should an action be brought against the members of the board for damages, or a prosecution by indictment be instituted, their determination, which would be alleged to be judicial in character, would be interposed as a defense. One of the chief objects of a writ of certiorari is to compel boards and public officers, having judicial functions, to keep within the jurisdiction conferred upon them, and to compel them to perform their duties according to the commands of the statute. If we are right upon the first two propositions, a public and a private wrong was committed by the determination, and there is no mode provided by law for a reversal of that decision except by this proceeding. Under such circumstances, a court having general jurisdiction to review and correct the errors of subordinate tribunals, should not cramp its authority within the narrowest limits, but hold that it is broad enough to correct the evil complained of, unless prevented by the force of some statute. The common-law power of this court to correct, by means of this writ, the errors of inferior tribunals exercising judicial, or quasi-judicial, power, is preserved by the Code of Civil Procedure (§ 2120).

The refusal of the board of police to receive evidence as to which of the papers were entitled to be designated, and to determine the question on evidence, was erroneous, and its determination illegal, and it is set aside, with fifty dollars costs to the relator.

Writ dismissed.